(89 Misc. Rep. 115)

### HIRSCHFIELD v. BOARD OF EDUCATION.

(Supreme Court, Special Term, New York County. January, 1915.)

1. SCHOOLS AND SCHOOL DISTRICTS ⬅144—TEACHERS—SALARIES.

As used in Laws 1913, c. 534, which added to Greater New York Charter (Laws 1901, c. 466) § 1091, a provision that the salary of a "male teacher in the grades of the seventh and eighth years," appointed to teach in the elementary schools prior to January 1, 1912, should not be less than that then fixed for any regular teacher in the elementary schools, the words quoted referred to those persons only who theretofore had been formally appointed or promoted to those positions pursuant to section 1090 of such charter, and not to those who had been teaching in those grades under temporary assignments.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 308–314; Dec. Dig. ⬅144.]

2. SCHOOLS AND SCHOOL DISTRICTS ⬅133 — STATUS OF TEACHER — HOW CREATED.

The status of a teacher in the elementary schools in the city of New York as a teacher in a grade is created by the formal action of the board of superintendents and of the board of education, either by an original appointment under Greater New York Charter, § 1090, or by a promotion thereunder.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 289–291; Dec. Dig. ⬅133.]

Application for a writ of peremptory mandamus by Samuel D. Hirschfield against the Board of Education. Denied.

Crawford & Tuska, of New York City (G. H. Crawford, of New York City, of counsel), for relator.

Frank L. Polk, Corp. Counsel, of New York City, for respondent.

DAVIS, J. [1] This is an application for a peremptory writ of mandamus directing the board of education of the city of New York and the city superintendent of schools to certify or cause to be certified to the proper official the name of Samuel D. Hirschfield, a teacher in public school No. 5, borough of Manhattan, for payment of salary under salary schedule No. 7, established by the by-laws of the board of education, according to the ninth year of service in that schedule; i. e., for the annual sum of $2,100. The decision of the motion will depend upon the construction to be given to the following provision, which was added to section 1091 of the Revised Greater New York Charter by chapter 534 of the Laws of 1913, to wit:

"The salary of a * * * male teacher in the grades of the seventh and eighth years appointed to teach in elementary schools prior to January first, nineteen hundred and twelve, shall be not less than that now fixed for any regular teacher in the elementary schools."

If the relator at the time the act was passed was "a male teacher in the grade of the seventh and eighth years," his motion must be granted to the extent, at least, of granting an alternative writ. The relator was appointed a teacher by the board of education February 1, 1906, being then the holder of a temporary license as a grade teacher in the elementary schools of the city. He received a permanent license (license No. 1) February 1, 1909. He has been teaching ever since his appointment in 1906, part of the time in public school No. 25, Manhattan, and since February, 1912, in public school No. 5, Manhattan, where he is now teaching. He is thus serving in his ninth year as teacher in the elementary schools. The course in the elementary schools covers eight years, and each year has two grades designated in the following manner, from the first year to and including the last: 1A, 1B, 2A, 2B, 3A, 3B, 4A, 4B, 5A, 5B, 6A, 6B, 7A, 7B, 8A, 8B. Each grade covers approximately half a year. Thus the studies of the seventh year are pursued in grades 7A and 7B, and those of the eighth year in grades 8A and 8B; the latter being the highest grade as well as the graduating class. After his appointment by the board of education the relator was assigned to teach in grades 4A to 6B, inclusive. The only license held by him at any time is license No. 1, issued on September 11, 1905, and made permanent, as stated above, on February 1, 1909. The relator continued to teach in the grades from 4A to 6B until February 1, 1911, on which date the principal of his school assigned him to grade 7A, where he continued teaching until June 30, 1911. Thereafter he was assigned to 6B grade, remaining there until January 31, 1912. On February 1, 1912, his principal again assigned him to grade 7A, where he remained until January 31, 1914. On February 1, 1914, the principal assigned him to grade 7B, where he has continued to date.

None of these assignments was approved or confirmed by the board of superintendents or the board of education, but they were made by the

principal in an emergency created by the failure of the board of education since 1911 to promote men to the grades of the last two years of the course. When these various assignments were made by the principal, the relator's name was not on the eligible list of persons eligible for promotion to the grades of the last two years (7A, 7B, 8A, 8B), nor did he have a promotion license. The character of these assignments appears in the writings themselves. For instance, they are there referred to as a "temporary assignment," and are to be made only "in case of emergency," and "until such time as the position shall be regularly filled in accordance with law and with the by-laws of the board of education." They are revocable at any time, and give no right to advanced rank or increase of salary. It also appears that the relator accepted in writing the assignments under the conditions stated in them. The relator is now receiving $1,740 per annum under salary schedule No. 6, the salary fixed for the ninth year for a teacher such as relator appointed to teach in grades 4A to 6B, inclusive.

While the relator was teaching in the grade of the seventh year, the so-called Silverstein law was passed. It is chapter 534, Laws of 1913, and it amended section 1091 of the Revised Greater New York Charter (Laws of 1901, c. 466, as amended), by adding the following provision, which, for convenience, is here repeated:

"The salary of a * * * male teacher in the grades of the seventh and eighth years appointed to teach in the elementary schools prior to January first, nineteen hundred and twelve, shall be not less than that now fixed for any regular teacher in the elementary schools."

Relator claims that he comes within the statute and is entitled to receive the salary of the grade of the seventh year; that is $2,100, the amount fixed in schedule 7 for the ninth year of teaching. The relator contends that the sole purpose of the Law of 1913 was to remedy an injustice done him and 90 other teachers by assigning them to teach for about three years in the grades of the last two years without giving them the salary of those grades. As stated in the exhaustive brief of the learned counsel for the relator:

"It was obviously unjust that men who were doing the work of the higher grades should not receive appropriate salaries, and the only conceivable purpose of the Silverstein law (Laws of 1913, c. 534) was to redress this injustice."

According to this view, the relator and the other 90 teachers referred to above are the persons for whose special benefit this statute was passed. Because of their service in the higher grades they were promoted by the act to the higher grades with the higher salary of those grades. The injustice complained of by the relator after all is not very great—not great enough to warrant the conclusion that the Legislature made him and the other 90 teachers the subject of special legislation. These teachers taught in the higher grades willingly, and doubtless regarded it as a special distinction to be selected for that work. The work to be done was of a higher order, and the experience of great value in their career as teachers. Moreover, they accepted the assignments with the express understanding that they were temporary and entitled them to no increase of salary, and presumably they

could have properly declined the assignment in their discretion. If relator's view of the legislative intent be correct, it follows that the Legislature has promoted, with a consequent increase of salary, the relator and 90 other teachers from the position of teacher in lower grades to the position of teacher in the grades of the last two years, thus relieving them of the necessity of passing a qualifying examination for promotion, of securing a promotion license, of getting on an eligible list, and thereafter of being nominated for promotion by the board of superintendents and of getting the approval of the board of education, all of which was required of them before the passage of the act. Moreover, it would be special legislation of an objectionable character, and calculated to disorganize the whole system of appointments, promotions, and salaries of teachers in the educational department of the city, a result which negatives the legislative intent insisted upon by the relator.

We do not believe that the Legislature intended to promote these few teachers like the relator, and leave all other teachers subject to the laws and ordinance of the board of education and the board of superintendents in matters of promotions and salaries. As already stated, the relator claims that the main purpose of the Legislature in passing the Silverstein law was to give relief to the teachers referred to above; but he claims, also, that it had another purpose, to wit, the breaking of the deadlock then existing between the city superintendent and the board of education over promotions to the higher grades, which resulted, as stated above, in failing to fill many vacancies then existing in those higher grades. At the passage of the Silverstein law this dispute was pending before the state commissioner of education under section 880 of the Education Law (Consol. Laws, c. 16). In other words, it is claimed that the Legislature intended by the act to break this deadlock and by a short cut fill the vacancies so existing by establishing therein the relator and the 90 other teachers similarly situated. Had the Legislature intended to break this deadlock, it is reasonable to suppose that it would have done it by defining and declaring the status of the licenses concerning which the dispute arose, and by thus settling their value dispose of the issue raised by the city superintendent, and so open the way for promotions to be made in the manner already provided for by law. The Legislature would have selected the method least likely to disturb the system of promotions and salaries as then existing. In fact, I cannot see that this so-called deadlock had any relation whatever to the action of the Legislature in passing the Silverstein law.

Moreover, the issues raised by the dispute between the city superintendent and the board of education were then sub judice before the state commissioner of education, and it is unlikely that the Legislature would take the matter out of the hands of that official by the passage of a special act. On the contrary, it is my opinion that the Silverstein law was passed for a purpose quite different from that urged by the relator. It was passed as a part of certain legislation designed to restore to male teachers in elementary schools salaries which had been lowered by the operation of the so-called Equal Pay Law. Laws of 1911, c. 902, operative January 1, 1912. This is ap-

parent from a brief review of the changes made in salary schedules in recent years. At the time of relator's appointment in 1906 the salaries of male school teachers in elementary schools were fixed by two schedules adopted by the board of education in accordance with the provisions of section 1091 of the revised charter. Thus male teachers in grades below the highest (8B grade) were paid under schedule 6, and male teachers in elementary schools appointed to classes in the highest grade—that is, the 8B grade—received salaries in accordance with schedule 7. These two schedules, 6 and 7, continued in force until the Equal Pay Law (Laws of 1911, c. 902), became operative, January 1, 1912, when a new schedule went into operation.

It is not necessary to set out at length this schedule, but a comparison of it with the former schedules, 6 and 7, will disclose that the scale of salaries of men teachers under the new schedule was considerably lower than in the old schedules 6 and 7. The new schedule also equalized the pay of all teachers in grades 7A, 7B, 8A, and 8B. The Equal Pay Law has been so amended that at present the old higher salary schedules for men, 6 and 7, have been revived. Laws of 1912, c. 459; Laws of 1913, c. 534; Laws of 1913, c. 838; Laws of 1914, c. 264. An examination of these amendatory acts reveals a clear and single purpose on the part of the Legislature to preserve for male teachers in the elementary schools the higher salaries secured to them in schedules 6 and 7 before the passage of the so-called Equal Pay Law and to give the same salaries to teachers in the grades of the seventh and eighth years. The effect of the Silverstein law is to give to teachers in the 7A, 7B, and 8A grades the same salary as teachers in the 8B grade; that is, the salary fixed by schedule 7. Before the passage of the act these teachers were paid under schedule 6, while those in 8B grade came under schedule 7.

The relator claims that he comes within the class of teachers specifically mentioned in the act. In other words, he takes the ground that he is "a male teacher in the grades of the seventh and eighth years," within the meaning of the act, and is entitled to receive a salary of $2,100. His contention that he was "a male teacher in the grades of the seventh and eighth years" at the time of the passage of the act is not borne out by the facts. He is now, and always has been, a male teacher in the grades 4A to 6B, inclusive. Such was his legal status as a teacher during all the time he served in 7A grade under the temporary assignments of his principal, and the mere fact that he taught under temporary assignments in the grades of the last two years did not alter his status as a teacher in the lower grades, or constitute an appointment or promotion of him to the higher grade. Hazen v. Board of Education, 127 App. Div. 235, 111 N. Y. Supp. 337; Stetson v. Board of Education, 165 App. Div. 476, 150 N. Y. Supp. 847; Hoefling v. Board of Education, 120 App. Div. 545, 104 N. Y. Supp. 941.

[2] The status of a teacher as a *teacher in a grade* is created by the formal action of the board of superintendents and of the board of education, either by an original appointment or by a promotion. See section 1090 of the Revised Charter, as follows:

"Principals * * * teachers * * * shall be appointed by the board of education on the nomination of the board of superintendents. Such nominations and appointments shall be made, except in the case of high schools or training schools for teachers, for the several local school board districts respectively, and when so made the principals * * * teachers * * * shall be assigned to duty to such schools, and to such positions in such schools, as the board of superintendents shall determine."

Nor had the relator been promoted to the higher grade under section 1090 of the Revised Charter. That section reads:

"Teachers and principals may be promoted * * * by the board of superintendents subject to the approval of the board of education."

Therefore we must conclude that, when the Legislature referred to "male teacher in the grade of the seventh and eighth years" in the Law of 1913, it referred to those persons only who theretofore had been formally appointed or promoted to those positions in accordance with the law, as pointed out above, and in no sense to those who, like the relator, had been teaching in those grades under temporary assignments. In this discussion I have kept in mind that the relator claims the higher salary, not because he accepted the temporary assignments to and performed the duties of the higher grades, but solely under the Silverstein law.

The case of People ex rel. Fox v. Board of Education, N. Y. L. J., May 13, 1914, no opinion, is similar to the case at bar, and was affirmed by the Appellate Division. See announcement of November 27, 1914, 150 N. Y. Supp. 1104.

Under the circumstances, the motion of the relator for a peremptory writ of mandamus must be denied, with costs.

Motion denied, with costs.